# E. W. McArthur, Admr., Plff. in Err,, *v.* Charles N. Chase et Ux.

A contract with a beneficial order, by a member, to furnish support, medical attendance, and burial to another member, who is a charge upon the order, is an insurable interest in the life of the latter; and, where no question is raised in the court below as to the amount of that interest, a judgment for the full amount of the policy will be sustained. ,

(Argued January 31, 1887. Decided February 14, 1887.)

January Term, 1886, No. 356, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Error to the Common Pleas of Crawford County to review a judgment on a verdict for plaintiffs in an issue in assumpsit directed by the court on a rule to interplead. Affirmed.

The facts appear by the following charge of the court to the jury, by CHURCH, P. J.:

The facts of this case, as they have been developed, are not very difficult to comprehend. It seems that Samuel F. L. Blair, in his lifetime, became a member of a subordinate lodge, styling itself Lodge No. 1, Ancient Order of United Workmen. The lodge was subordinate to the Grand Lodge of the Ancient Order of United Workmen, of the state of Pennsylvania, which was duly incorporated. As such member he was entitled, if he made application, to a certificate which provided that, upon his death, or rather, upon his complying with certain rules and regulations as to the payment of assessments, etc., during his lifetime, upon his death the grand lodge would pay to his beneficiary, named in the certificate, the sum of $2,000.

He died in November, 1884, and letters of administration

NOTE.—For authorities as to what constitutes an insurable interest in the life of another, see the following editorial notes presenting the authorities on their respective subjects: Insurable interest of wife in husband's life, note to Brick v. Campbell, 10 L. R. A. 259; wife's right to insure life of her husband, note to Metropolitan L. Ins. Co. v. Smith, 53 L. R. A. 817; validity of life insurance for benefit of betrothed wife, note to Alexander v. Parker, 19 L. R. A. 187; right to take life insurance for benefit of stranger, note to Heinlein v. Imperial L. Ins. Co. 25 L. R. A. 627; insurable interest in life of parent or child or other relative by blood, note to Life Ins. Clearing Co. v. O'Neill, 54 L. R. A. 225.

were taken out on his estate by E. W. McArthur, who brought suit against the Grand Lodge of the A. O. U. W. of Pennsylvania, to recover the amount alleged to have been pledged upon the death of Mr. Blair.

Charles N. and Mary L. Chase, who call themselves the beneficiaries, by the terms of the certificate issued by the grand lodge, also brought suit against the grand lodge of Pennsylvania, claiming from them the sum of $2,000. These suits were pending in court, and if they had both been pursued to a successful termination by the plaintiffs, the Grand Lodge of the A. O. U. W. would have been compelled to pay $4,000. That, of course, would not do, but the lodge petitioned the court to call a halt on these two plaintiffs, so far as proceeding with their suits against them, and offered to pay the money into court, which they had in their possession, ready to be paid to the person lawfully entitled to it.

The court did call a halt, and directed these claimants to this $2,000 to form an issue to determine the right to recover from the lodge, and that is the suit we are now trying. The lodge has $2,000 to pay to someone.

Charles N. and Mary L. Chase claim it, and Blair's administrator also claims it.

This Grand Lodge of United Workmen was incorporated by the legislature of this commonwealth in 1871, whereby they were given the right to have all the incidents pertaining to a corporation or body politic.

The second section of the act provides that the object of the corporation shall be to improve the moral, mental, and social condition of the members of the lodges under its jurisdiction, to prevent strikes among its members by exhausting all honorable means to that end.

The fourth section provides that it shall be lawful for the corporation to create, hold, and disburse a beneficiary fund for the relief of the members of the lodges established by this corporation, and their families under such regulations as may be adopted by the corporation.

In pursuance of the powers given by this act of assembly, the grand lodge did adopt certain rules and regulations upon the subject of beneficiaries of the deceased members of the several subordinate lodges under their jurisdiction. The first section of the beneficiary article, or rules and regulations, as it may be

indifferently called, provides: "That the Ancient Order of United Workmen of Pennsylvania, a body politic and corporate, guarantees each member of the master workman's degree the payment at his death of $2,000, to such person or persons as he may, while living, direct."

Another one of the rules and regulations of this beneficiary article also provides: "That the grand lodge shall issue or cause to be issued all beneficiary certificates, which certificates shall set forth the amount to be paid at the death of the member, to whom the certificate has been issued, and to whom payable," and the same to be signed by the officers of the grand lodge, and sealed with the corporate seal, and issued to the member of the subordinate lodge.

Section 12 provides that the grand recorder or some other officer of the beneficiary fund shall pay the loss of this $2,000 (a death having occurred), under this beneficiary certificate, taking a receipt of the person named in the beneficiary certificate.

It is also provided by § 13—a portion of the rules and regulations—"that any member holding a beneficiary certificate, desiring at any time to make a new direction as to the payment, may do so by authorizing such change in writing on the back of the certificate, in the form prescribed, attested by the recorder, with the seal of the lodge attached, and by the payment to the grand lodge of the sum of 50 cents, but no change or direction shall be valid or have any binding force or effect until the said change shall have been reported to the grand recorder, and the old certificate, if practicable, filed with him, and a new beneficiary certificate issued thereon, and said new certificate shall be numbered the same as the old certificate."

While those provisions were in force, Mr. Blair, a member of Jefferson Lodge, No. 1, received a beneficiary certificate on the 26th of May, 1874, and the person named in that beneficiary certificate as entitled to the sum of $2,000 at his death was Marion Ella Blair, the wife of S. F. L. Blair.

In 1880 this certificate was changed by him, the old certificate surrendered, and a new one issued, upon his complying with the terms and laws, according to the rules and regulations of the beneficiary article, according to the testimony of Mr. Dougan, and the lodge was made the beneficiary. He changed the beneficiary, as it seems he had a right to do, from Marion Ella Blair, his wife.

About this time, it is admitted that Marion Ella Blair was divorced from the bonds of matrimony with S. F. L. Blair. Presumably it was on that occasion that he changed his beneficiary.

From 1880 until 1884 Jefferson Lodge was the beneficiary named, and they undertook to and did pay the assessments and dues that were assessed upon Blair from time to time. They took charge of it, probably by reason of some regulations of the subordinate lodge.

Blair had become in the meantime very sick, and was unable to take care of himself, and it is in evidence that his sister or some other member of the family declined to keep him at her house, and brought him to this town, and left him at a stranger's; he was taken back to the sister's, who returned him to the stranger's house. From the testimony of Mr. Dougan we learn it was then that Jefferson Lodge, the beneficiary in the certificate, provided means and a place for keeping Mr. Blair during his sickness. Charles N. and Mary L. Chase were the persons who undertook to provide a home for Mr. Blair, and were to receive from the subordinate lodge a certain stipend a week.

About the 17th of July, 1884, a different arrangement seems to have been made, wherein Jefferson Lodge, Mr. and Mrs. Chase, these plaintiffs, and Blair, himself, were all parties and the certificate, as a result of that, was changed a second time, and the old certificate surrendered. The provisions of the beneficiary article, according to the testimony of Mr. Dougan, were all carried into effect and a new certificate was issued, and Charles N. and Mary L. Chase were named therein.

Furthermore, as a part of the transaction, this subordinate lodge took a bond and mortgage in the penalty of $2,000, upon condition that Chase and wife, the beneficiary named in this certificate, should take charge of S. F. L. Blair, should keep him at their home, furnish him a home, give him the necessary food, clothing, medicine and attention when sick, and if he should die, bury him at their own expense, and furnish a suitable monument or tombstone at his grave.

Prima facie, from what I have read as to the rights and responsibilities of this grand lodge of workmen, the beneficiary named in that certificate is entitled to recover.

It is alleged upon the part of the defendant here, namely, S. F. L. Blair's administrator, that the contract which was entered into from the 17th of July to the 29th of July, 1884,

whereby the old certificate was surrendered and a new one taken out, was a contract not reckoned allowable according to public policy, and that it is a contract which cannot be enforced by the courts, and that is a question for the court to determine.

Gentlemen of the jury, I am very frank to say to you that it presents a very perplexing question. I am by no means satisfied of the correctness of the position I am about to take. It is true the supreme court of this commonwealth have done what they could to stamp out a very pernicious system that has arisen within the past half dozen years, whereby there was an infinite number of associations gotten up for the purpose of insuring the lives of every person and any person, and whereby murder, as said in the argument, did actually occur, and persons were hung for actions that grew out of this pernicious system.

That is not the case with this lodge of United Workmen. No supreme court has passed sentence of condemnation upon the principles upon which this and kindred honest societies are legally to be carried on. [And, hence, however much we may be gratified with the stand taken by the supreme court of this commonwealth to punish gambling contracts, by which persons who have no interest in the insured were taking out insurance, thus giving a premium for a desire for an early death, nevertheless, I think this case ought to be decided according to the written policy itself, and the written terms of the rules and regulations which the Grand Lodge of Pennsylvania adopted, under the right so to do, given by the act of incorporation.]

[I do not think that Charles N. and Mary L. Chase would have a right, as strangers, to become beneficiaries under this, or any other certificate that might be issued upon the life of S. F. L. Blair; but, if it be true, and there is no evidence to contradict it, that in July, or prior thereto, Mr. Blair became enfeebled by disease, and became legally separated from his wife by divorce; had no family; that he could not shift for himself, had no money, no person to take care of him, and was refused a home by his kindred, and became an inmate of the house of Charles N. and Mary L. Chase, under the circumstances narrated in your hearing, by the testimony of Mr. Dougan, and also, the conditions mentioned in the bond and mortgage, I think that state of affairs has relieved this transaction from being a gambling contract, such as has been condemned by the courts.]

I have no private opinion of my own. I am bound to have

an opinion one way or the other, and it has seemed proper that it should be decided in the way I have undertaken to decide it.

If I am wrong this case will stand as a sign post for other persons about to enter upon contracts such as this purports to be.

I am favorably impressed with the arguments upon the part of the defendant; quite as much, probably, as with the arguments upon the part of the plaintiffs. [The cases read, the decisions, theory, and reasons of other courts, do not quite reach the circumstances of this case, and hence we answer all the points of the defendant in the negative, and direct a verdict to be entered for the plaintiffs.]

It further appeared from the evidence that Chase was also a member of the Order of United Workmen; and that Blair died November 1, 1884, leaving three minor children and a divorced wife, to survive him. The constitution of the order also contained a provision for the payment of weekly benefits to members during sickness.

The defendant's points were as follows:

1. Under its charter, constitution, and by-laws, the Grand Lodge of the Ancient Order of United Workmen of Pennsylvania had no right or authority to issue a beneficiary certificate on the life of S. F. L. Blair payable to the plaintiffs, and doing so was *ultra vires,* and conferred no right upon the plaintiffs.

2. Under the evidence in this case the plaintiffs had no insurable interest in the life of Samuel F. L. Blair at the time the beneficiary certificate was made payable and issued to them, and the verdict should be for the defendant.

3. The evidence on the part of the plaintiffs establishes a wager, or gambling contract, the result of which was dependent upon the life of S. F. L. Blair, and as such the contract made was void and the plaintiffs cannot recover in this case.

4. Under the evidence and the law of the case the verdict of the jury should be for the defendant.

The assignments of error specified the refusal of the points and the portions of the charge inclosed in brackets.

*Haskins & McClintock* and *John J. Henderson,* for plaintiff in error.—The assignment of a policy of insurance, though made in good faith, to a person who has no insurable interest in the life of the assured, is a wagering contract and contrary to the policy of the law. Downey v. Hoffer, 16 W. N. C. 184; Meily

v. Hershberger, 16 W. N. C. 186; Wegman v. Smith, 16 W. N. C. 186; and Stoner v. Line, 16 W. N. C. 187.

This case is on all fours with the late case of Seigrist v. Schmoltz, 113 Pa. 326, 6 Atl. 47, in which the court says: "The intention of John Schmoltz in obtaining this policy may have been innocent and pure; but this cannot be regarded, for the fact remains that he was in no way interested to maintain the life of Jacob Seigrist, and it is certain that the sooner that life was extinguished, the better it was in a pecuniary point of view, for the beneficiary. Nor does it help the matter, but rather the contrary, that the defendant had charged himself with the support of Seigrist, for all the more would his pecuniary interest be advanced by the termination of Seigrist's life."

To the like effect are the following cases: Gilbert v. Moose, 104 Pa. 74, 49 Am. Rep. 570; Ruth v. Katterman, 112 Pa. 251, 3 Atl. 833. See also Cammack v. Lewis, 15 Wall. 643, 21 L. ed. 244; Warnock v. Davis, 104 U. S. 775, 26 L. ed. 924; Morrell v. Trenton Mut. L. & F. Ins. Co. 10 Cush. 282, 57 Am. Dec. 92.

Blair had nothing to do with bringing about the change of certificate and making the Chases beneficiaries. It was their act and not his, and they, and not he, were to pay, and did pay, the expenses of the transfer, together with the dues and assessments. These facts take this case out of the ruling of Scott v. Dickson, 16 W. N. C. 181.

*William R. Bole, Myron Park Davis,* and *J. W. Smith,* for defendants in error.—To change the beneficiary in his certificate, in compliance with the rules and regulations of the order, was a right the decedent possessed under its laws, and to exercise whenever and as often as he chose. Barton v. Provident Mut. Relief Asso. 63 N. H. 535, 3 Atl. 627.

The subordinate lodge to which they both belonged had expended a large sum of money on behalf of Blair, and to which Chase had contributed his weekly dues. Chase himself expended a large sum on his behalf. It was a contract that was not forbidden by any law.

It is not to the special interest of the Ancient Order of United Workmen or any member thereof, that a brother member should die, for in that case they will be called upon to pay the bene-

ficiary $2,000, and each brother be required to contribute his assessment to it.

"Supposing a fair and proper insurable interest of whatever kind to exist at the time of taking out the policy, and that it be taken out in good faith, the object and purpose of the rule which condemns wager policies is sufficiently attained; and there is no good reason why the contract should not be carried out according to its terms." Connecticut Mut. L. Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. ed. 251; McKee v. Phœnix Ins. Co. 28 Mo. 385, 75 Am. Dec. 129; Corson's Appeal, 113 Pa. 438, 57 Am. Rep. 479, 6 Atl. 213.

"It would be denying a man's right to do what he will with his own to say that he could not in any form insure his life for the benefit of an indigent relation, or a friend to whom he felt under obligations." Scott v. Dickson, 16 W. N. C. 181.

The plaintiff in error does not represent the children of Blair, nor any of his kindred, and not even a creditor, for Blair had no creditors, save this order and the defendant in error, and is not therefore entitled to this fund, even if it is a wagering contract. Bomberger v. United Brethren Mut. Aid Soc. 3 Sad. Rep. 293.

Seigrist v. Schmoltz, 113 Pa. 326, 6 Atl. 47, and Downey v. Hoffer, 16 W. N. C. 185, were cases of pure speculation, where there was no semblance of any insurable interest; and in such cases public policy forbids the recovery of more than was expended by the beneficiary, without regard to his good faith.

Per Curiam:

The plaintiffs below had an indubitable insurable interest in the life of Blair. No question was raised on the trial, as to the amount or extent of that interest. The right to recover any sum was denied. The record does not permit a consideration of the restricted claim now attempted to be made.

Judgment affirmed.